**Gail DANIELS, et al., Appellants,**

v.

**Ida Mae BEEKS, Appellee.**

**No. 86–746.**

District of Columbia Court of Appeals.

Argued April 9, 1987.

Decided Oct. 19, 1987.

Peggy A. Miller, Washington, D.C., for appellants.

Reginald L. Holt, Washington, D.C., for appellee.

Before FERREN and BELSON, Associate Judges, and NEBEKER,* Associate Judge, Retired.

BELSON, Associate Judge:

This case involves a will contest between appellants Gail Daniels and Salome Ardelle Burton, the granddaughters of the decedent, on the one hand, and decedent's sister-in-law, Ida Mae Beeks, on the other. Benjamin Burton, the decedent, executed a will on June 15, 1983, bequeathing his entire estate to appellee Beeks. Appellants would be entitled to receive a portion of the estate as decedent's heirs-at-law if he had died intestate. After a bench trial, the court granted judgment for appellee, Ida Beeks. Appellants challenge not the trial court's conduct of the trial, but its previous rulings refusing to allow appellants to amend the pretrial statement so as to add an expert witness, and excluding portions of decedent's medical records. We agree with appellant's first contention and therefore reverse and remand for a new trial.

The procedural history of this case began on December 6, 1984, when appellants filed a complaint opposing probate of the will. The complaint alleged that the decedent lacked testamentary capacity and was under the undue influence of appellee at the

time the will was executed. An answer to the complaint was filed on December 28, 1984, and, in January 1985, a pretrial conference was set for April 9, 1985. On January 20, 1985, appellants sent a letter to Georgetown University Hospital requesting copies of decedent's hospital records. By letter dated January 29, 1985, the hospital informed appellants that it had not been authorized to release the decedent's medical records. The record does not show any further attempt by appellants to obtain decedent's medical records until after the pretrial conference.

Both parties filed pretrial statements in March 1985. Appellants' pretrial statement listed four witnesses, only one of whom was an expert witness on the issue of the decedent's testamentary capacity, decedent's treating physician, Dr. Lyddane. Appellants also asked for forty-five additional days in which to complete discovery. At the pretrial conference on April 9, 1985, the trial court apparently granted the parties an additional thirty days for discovery. The trial court never entered a pretrial order.

On or about April 18, 1985, appellants attempted to subpoena decedent's medical records from Georgetown University Hospital. Appellants had not yet received all of the records as of May 21, 1985, the day on which they filed a supplemental pretrial statement listing six additional witnesses, including an expert witness, Dr. Denise Holland. On June 25, 1985, appellants requested a second pretrial conference on the grounds that no pretrial order had been entered after the previous conference and, in the absence of such an order, appellee had disputed appellants' assertion that the court had given appellants additional time in which to complete discovery. The trial at that time was scheduled to begin on July 9, 1985.

On July 3, appellee requested and was granted a continuance of the trial date from July 9, 1985, to August 12, 1985, because she had obtained new counsel. On August 7, 1985, appellee filed a motion to

---

* Judge Nebeker was an Associate Judge of this court at the time of argument. His status changed to Associate Judge, Retired, on September 1, 1987.

strike appellants' supplemental pretrial statement on the grounds that the statement was untimely, was entered after discovery had terminated, thereby preventing appellee from deposing appellants' witnesses, and was filed in violation of Super.Ct. Civ.R. 16 and 26(b)(4). Appellants rejoined, *inter alia,* that their supplemental pretrial statement was timely since it was based upon information and documents obtained during the extended discovery period authorized by the court. On August 12, 1985, the trial court granted appellee's motion to strike appellants' supplemental pretrial statement. In the meantime, a deposition of Dr. Lyddane, who was terminally ill, had been taken on July 30–31, 1985.

The trial was again rescheduled, to begin on November 26, 1985. Appellants filed a motion for leave to file a supplemental pretrial statement on October 11, 1985. Appellee filed her opposition on October 17, 1985. On November 20, 1985, the trial court heard argument on appellants' motion. Appellants proffered that if Dr. Holland were allowed to testify, she would offer her interpretation of the decedent's hospital records and the decedent's mental state as reflected in those records, based on her experience as the director of a geriatric ward of a hospital. Following argument, the trial court denied the motion.

For reasons which are not in the record, the trial was again continued, this time to January 21, 1986. During trial, appellants renewed their motion to amend their pretrial statement to include the testimony of Dr. Holland. The motion was denied. At trial, appellants sought to introduce records of decedent's hospitalizations on December 7, 1982, June 16, 1983, and December 7, 1983. The trial court excluded all but the June 1983 records on the ground of lack of relevance, specifically, lack of temporal proximity to the execution of the will on June 15, 1983. The trial court also excluded evidence concerning the treating physician's diagnosis of the decedent's ailments during his June 16, 1983, visit to the hospital, including his statement that decedent's "[m]emory was poor."

Appellants urge that the trial court erred in its pretrial rulings in two respects: by failing to issue a pretrial order to inform the parties of the pretrial status of the case, and by refusing to allow appellants to modify their initial pretrial order to add several witnesses. Pursuant to Super.Ct. Civ.R. 16 (1984) (amended Sept. 1985), the trial court, in its discretion, was authorized to call a pretrial conference to consider, *inter alia,* limiting the number of expert witnesses. The rule further provided that "[t]he Court shall make an order which recites the action taken at the conference ... and such order when entered controls the subsequent course of the action, unless modified at the trial to prevent manifest injustice." *Id.* Super.Ct.Civ.R. 16–I(a) (1984) (abrogated Sept. 1985), in effect at the time of the pretrial conference, also mandated the issuance of a pretrial order.

■ Although the rules of the Superior Court, like their federal counterparts, mandate the entry of a pretrial order, a trial court's failure to do so is not necessarily reversible error. *See MCI Communications Corp. v. American Tel. & Tel. Co.,* 708 F.2d 1081, 1169–70 (7th Cir.), *cert. denied,* 464 U.S. 891, 104 S.Ct. 234, 78 L.Ed.2d 226 (1983) (pretrial order not mandatory when pretrial conference failed to produce agreed statement and definition of issues); 3 J. MOORE, MOORE'S FEDERAL PRACTICE ¶ 16.18 (2d ed. 1985). In the instant case, however, that error, in conjunction with the trial court's refusal to allow appellants to amend their pretrial statement, amounted to an abuse of discretion.

In *Jones v. Union Automobile Indemnity Association,* 287 F.2d 27 (10th Cir.1961), the court held that the trial court's failure to follow the provision of FED.R.CIV.P. 16, requiring entry of a pretrial order, prevented it from denying a party permission to call as a witness a person not named on witness lists that had been exchanged pursuant to pretrial proceedings. 287 F.2d at 29. While we decline to adopt such a strict approach, we hold that the trial court's failure to follow the requirements of Rule 16 is one factor to be considered in determining whether it abused its discretion in

deciding not to allow appellants to supplement their pretrial statement. *Cf. Roark v. Dempsey*, 159 W.Va. 24, 29–33, 217 S.E.2d 913, 917–18 (1975) (declining to adopt the rule of *Jones* restricting discretion of trial court, but finding that trial court abused discretion in excluding testimony of newly found eyewitness to automobile accident).

There are several other factors that this court generally considers in deciding whether a trial court abused its discretion in refusing to allow a party to modify its pretrial statement (or in refusing to modify the court's pretrial order). The most important factor appears to be whether the opposing party was surprised or would have been prejudiced by the requested change. In *Redding v. Capitol Cab Co.*, 284 A.2d 54 (D.C.1971), this court noted that "[t]he purpose of the pretrial conference is to define the claims and defenses of the parties in order to narrow the issues, eliminate unnecessary proof and lessen the opportunity for surprise thereby expediting the trial." *Id.* at 55. We emphasized in *Taylor v. Washington Hospital Center*, 407 A.2d 585 (D.C.1979), *cert. denied*, 446 U.S. 921, 100 S.Ct. 1857, 64 L.Ed.2d 275 (1980), that pretrial procedures are designed to remove cases from the realm of surprise. *Id.* at 592. There we affirmed the trial court's denial of Taylor's motion to modify the pretrial order so as to raise a new theory of negligence against a new defendant. The court found the ruling consistent with the spirit of Rule 16 because the defendant was surprised and would have been prejudiced by the proposed modification, and because there was no indication that the proffered theory was based on newly discovered evidence. *Id.* at 593; *see also Clarke v. District of Columbia*, 311 A.2d 508, 510–11 (D.C.1973) (trial court abused its discretion in disallowing amend-

ment to pretrial order where no element of surprise).

Here, although appellee may have been surprised when appellants initially filed a supplemental pretrial statement, the court could have permitted the filing, and, at the same time, prevented any prejudice to appellee. On October 11, 1985 (and probably also on May 21, 1985—the record is not entirely clear) when appellants attempted to amend the pretrial statement so as to include the testimony of Dr. Holland, it was over a month before trial was then scheduled to begin. The trial court had ample time to accommodate any request by appellee to obtain discovery of any additional witnesses identified in appellants' supplemental pretrial statement. *See Washington Hosp. Center v. Cheeks*, 129 U.S.App.D.C. 339, 340–41, 394 F.2d 964, 965–66 (1968) (trial court did not abuse discretion in permitting plaintiff to call expert witness not included in witness lists required by pretrial order when plaintiff, surprised by trial testimony of his attending physician and defendant, was given opportunity to depose expert witness before witness testified). Thus, any surprise or prejudice to appellee caused by the lateness of the supplement to appellants' pretrial statement could have been cured easily by the trial court prior to trial.

A second factor this court considers is whether the excluded evidence was "newly discovered" after the pretrial conference. Although this court has made no rulings defining a trial court's obligations when evidence is discovered after the issuance of a pretrial order, it has recognized in dicta that the late discovery of evidence sometimes provides justification for the modification of a pretrial order.[1] *See Taylor*, *supra*, 407 A.2d at 592; *Redding, supra*, 284 A.2d at 55.

---

**1.** In *Dabney v. Montgomery Ward & Co.*, 692 F.2d 49 (8th Cir.1982), *cert. denied*, 461 U.S. 957, 103 S.Ct. 2429, 77 L.Ed.2d 1316 (1983), the United States Court of Appeals for the Eighth Circuit addressed such a situation. Under the particular circumstances of that case, the court found reversible error where the trial court refused defendant's day-of-trial request to amend the witness list when defendant had learned of the existence and relevant testimony of the witness only hours before the trial was scheduled to begin. *Id.* at 50. Defendant's diligence and good faith were unquestioned, and there appeared no reason why plaintiff's three counsel, their associates, or investigators could not have investigated the new witness' testimony during the course of trial. *Id.* at 51–52.

In the instant case, the medical records from Georgetown University Hospital were obtained after the pretrial conference, although an attempt had been made to acquire them earlier. Appellants filed their first supplemental pretrial statement, adding Dr. Holland as a witness, after they had obtained some medical records from the hospital. There is plausibility to appellants' argument that they did not realize that they would need expert testimony until after they had examined the records, and that they attempted to supplement their pretrial statement as soon as they realized the need for additional witnesses.

We observe, thirdly, that this court treats less favorably motions to supplement the pretrial order made on the day of trial or on the eve of trial. This policy is obviously related to preventing prejudice and surprise to the opposing party. *See Taylor, supra*, 407 A.2d 585 *passim* (referring repeatedly to appellant's "day-of-trial" motion to amend pretrial order). Here, the motions were not filed on the eve of any of the trial dates set. Given the discovery of the hospital records during the additional time provided, the absence of a pre-trial order, and the repeated effort of appellants to amend the pre-trial statement, we are satisfied that appellants' efforts were not unduly delayed.

Having considered all the foregoing factors, we hold that the trial court acted outside the bounds of its discretion in denying appellants' request when there was adequate time to permit appellee to prepare to meet the testimony of the additional witness.

Turning to the question of prejudice, we conclude that appellants were harmed by the trial court's ruling. Dr. Holland's testimony apparently would have been admissible on the issue of testamentary capacity since, as a physician specializing in geriatrics, she could be expected to be familiar with the symptoms of various mental diseases affecting the elderly. *See Crockett v. Davis*, 81 Md. 134, 148, 31 A. 710, 712 (1895); 3 PAGE ON THE LAW OF WILLS § 29.46 (W. BOWE & D. PARKER 1961); *cf. Obold v. Obold*, 82 U.S.App.D.C. 268, 269,

163 F.2d 32, 33 (1947) (per curiam) (lay witness may testify concerning mental capacity of testator). Given the conflicting testimony at trial concerning decedent's mental state at the time of the execution of the will, Dr. Holland's testimony might well have tipped the balance in favor of appellants. Under these circumstances, we find an abuse of discretion requiring reversal. *See generally Johnson v. United States*, 398 A.2d 354, 366–67 (D.C.1979).

■ Because the issue may arise again on remand, we also address appellants' claim that the trial court erred in not admitting into evidence certain of the decedent's medical records. The test for the admissibility of medical records enunciated by this court in *Adkins v. Morton*, 494 A.2d 652 (D.C.1985), is "whether the records are composed solely of '[r]egularly recorded facts as to the patient's condition or treatment on which the observations of competent physicians would not differ....'" *Id.* at 662 (quoting *New York Life Ins. Co. v. Taylor*, 79 U.S.App.D.C. 66, 72, 147 F.2d 297, 303 (1945) (alteration in original)). In *Adkins*, applying this test, we found no error when the trial court excluded a record that offered an opinion as to the etiology of Morton's symptoms where that issue was hotly disputed. *Id.* at 661–62. An example of an admissible hospital record is provided by *Sullivan v. United States*, 404 A.2d 153 (D.C.1979), a criminal case in which this court upheld the trial court's admission, as business records, of medical entries describing the complaining witness' condition while he was at the hospital, including his appearance, physical signs (such as pulse and respiration), and resulting diagnosis. *Id.* at 158.

■ In this case, the trial court excluded portions of the hospital records as being too remote in time from the date of the execution of the will to be relevant. Since those records documented hospital visits approximately six months before and after the will was executed, their relevance to the decedent's capacity to execute the will is marginal, and it was within the trial court's discretion to exclude them. The trial court erred, however, in excluding the

portion of the hospital record of the decedent's visit to the hospital on the day after he executed his will that said that the decedent's "[m]emory was poor." Such language merely describes the fact that the patient was unable to recall, a manifestation of the patient's mental condition at the time of the examination and as observed by the physician. It is not a diagnosis. *See United States v. Bohle*, 445 F.2d 54, 63–66 (7th Cir.1971) (diagnosis of mental condition excluded but description of patient's "disheveled, depressed" appearance and observation that "his judgment and insight was [sic] impaired" were admissible for their truth); *cf. Adkins, supra*, 494 A.2d at 661–62 (medical records' reference to "thrombosis" as cause of appellant's injury not admissible). The excluded portion of the June 16 record should have been admitted under the business records exception to the hearsay rule, Super.Ct.Civ.R. 43–I(a), because it is data recorded by the doctor as part of the normal course of the examination of a patient.

*Reversed and remanded for further proceedings consistent with this opinion.*