Nelson SANCHEZ, T/A Dudley Shoes, Appellant,

v.

ELEVEN FOURTEEN, INC., Appellee.

No. 91–CV–861.

District of Columbia Court of Appeals.

Submitted Feb. 16, 1993.
Decided April 27, 1993.

---

Morris R. Battino, Washington, DC, was on the brief, for appellant.

Philip M. Musolino, Washington, DC, was on the brief, for appellee.

Before ROGERS, Chief Judge, and STEADMAN and SULLIVAN, Associate Judges.

STEADMAN, Associate Judge:

Appellee, Eleven Fourteen, Inc. ("Tenant"), had a long-term lease from Manufacturers Life Insurance Company ("Lessor"), terminable on 180–days notice. Tenant sublet a portion of the premises to appellant, Nelson Sanchez ("Subtenant"), subject to the same termination provision. Lessor gave timely notice of termination of the master lease, to be effective August 31, 1989. Subtenant did not vacate the premises until late December of that year. Tenant brought suit for four months double rent for the holdover period under a provision of the sublease providing for double rent in such circumstances. The trial court granted the Tenant's motion for summary judgment on liability and at a subsequent bench trial on the issue of damages awarded Tenant the double rent sought.

■  On appeal, Subtenant's principal assertions are that: 1) Tenant had no right to recover any rental or damages since all its rights in the property terminated along with the master lease; and 2) in any event, the sublease provision for double rent was an unenforceable penalty clause.[1] We affirm.

---

1. Subtenant also claims that the trial court erred in allowing in certain evidence not listed in Tenant's pretrial statement. The evidence clearly came as no surprise to the Subtenant and the failure to list the evidence did not prejudice Subtenant in any way. Thus, the trial court did not abuse its discretion in allowing in the evidence. Super.Ct.Civ.R. 16(d); *see Daniels v. Beeks,* 532 A.2d 125, 128–29 (D.C.1987).

Subtenant makes two other claims relating to the sublease, neither of which has merit. First, he asserts he was given untimely notice of the intention to terminate, or at least that this was a material fact in dispute, precluding summary judgment. However, Subtenant in an answer to interrogatories acknowledged that he was served with a Notice of Lease Termination on February 22, 1989, more than 180 days prior to the August 31 termination date, and the sublease specifically provided that its term would expire "at such earlier date, if any, as the Prime Lease shall be terminated." Second, he claims that the lease was ambiguous as to whether the double rent clause or another provision applied in the case of a holding over, and that this, too, is a material fact in dispute. After a trial, the

**A.**

It is, of course, fundamental that the rights of a subtenant can, with at least one limited exception to be mentioned, rise no higher than those of his sublessor. *Camp v. Goodman*, 47 A.2d 516, 517 (D.C.1946); 1 MILTON R. FRIEDMAN, FRIEDMAN ON LEASES § 7.703 (1990) ("Termination of Prime Lease—Effect on Sublease") [hereinafter FRIEDMAN]. Therefore, upon the valid termination of the master lease by Lessor, both Tenant's and Subtenant's rights to further lawful possession of the premises came to an end.

▇▇▇ A holdover tenant is bound by the terms and conditions of the original lease and is liable to the landlord at least for rent or its equivalent. *Eden v. Abrams*, 259 A.2d 351, 353 (D.C.1969); *Hampton v. Mott Motors*, 32 A.2d 247, 248 (D.C.1943). Moreover, a tenant is responsible to the landlord for ensuring that his subtenant vacates the property upon the termination of the master lease. Therefore, when the subtenant holds over, it is conceptually a holding over by the tenant.

> A tenant has been held liable for damages for holding over after the expiration of the term although the holding over was by his subtenant without the consent and against his will. If the tenant has sublet, it is his duty to see that his subtenant vacates the premises, and he is liable in damages for a wrongful holding over by his subtenant.

49 AM.JUR.2D *Landlord and Tenant* § 1121, at 1073 (1970); *see also* 1 FRIEDMAN, *supra*, § 7.702, at 384. The landlord thus may hold the tenant to the remedies available to a landlord against a holdover tenant, even though the continued occupancy is in fact by a subtenant of the tenant. *Cf. Comedy v. Vito*, 492 A.2d 276, 279 & n.

3 (D.C.1985); *Eden, supra*, 259 A.2d at 353.

▇▇▇ Under such a legal regime, the tenant does in fact maintain a continuing relationship with the property in question as long as the subtenant remains on the property. Whatever the situation may be if a landlord elects to proceed directly against a subtenant, we conclude that a subtenant who holds over is estopped from denying liability to his or her sublessor under the terms of the sublease when the holding over by the subtenant is in violation of the sublease.

▇▇▇ Subtenant invokes an ancient doctrine that permits a subtenant to remain upon subleased property without payment of further rent where a prime tenant voluntarily surrenders the master lease prior to its termination date. The rule's policy basis was to prevent the tenant and landlord from joining to deprive the subtenant of his or her rights.[2] See *Camp, supra*, 47 A.2d at 517–18; ROBERT S. SCHOSHINSKI, AMERICAN LAW OF LANDLORD & TENANT § 8.13, at 574 (1980) [hereinafter SCHOSHINSKI]. However, a surrender, which requires the joint action of both landlord and tenant, *see Ostrow v. Smulkin*, 249 A.2d 520, 521 (D.C. 1969); *Thomas D. Walsh, Inc. v. Moore*, 141 A.2d 754, 755 (D.C.1958), is of course entirely different from a termination in accordance with the terms of both the master lease and the sublease, where the tenant remains liable to the landlord because of the unlawful holding over by the subtenant. Therefore, Subtenant's claim that Tenant had no remaining rights in the property must fail.

**B.**

▇▇▇ We turn then to Subtenant's claim that the double rent clause[3] in the sublease

---

trial court determined that the double rent clause was applicable and we perceive no reason to overturn that conclusion.

Subtenant claims that there were other material issues in dispute as well. However, since there were no material issues in dispute relating to liability, summary judgment as to liability was properly granted. As to material issues in dispute relating to damages, summary judgment was denied and a full trial was held.

2. There is no suggestion that the termination here was in any degree so motivated.

3. The relevant provision read:

> Holding Over. In the event that Sublessee holds over after termination of the Sublease, whether pursuant to the default provisions in paragraph 13 or otherwise, the rent payable by Sublessee for each month during such period as Sublessee holds over shall be twice the

imposed an unlawful penalty, rather than permissible liquidated damages. Framed in this manner,[4] the issue is whether the clause stipulates damages which, at the time of contracting, can reasonably be expected to result from a breach. *Burns v. Hanover Ins. Co.*, 454 A.2d 325, 327 (D.C. 1982).

The problem of the holdover tenant is one that has been much discussed, it being understood that the damages suffered by the landlord where a tenant stays on beyond the termination of a lease can markedly exceed the rental payments called for in the lease.[5] SCHOSHINSKI, *supra*, § 2.24. In the District of Columbia, a statutory provision provides for the payment of double rent by a tenant who holds over after giving notice of an intention to quit, D.C.Code § 45–1407 (1990). This provision, while not strictly applicable here, shows that a double-rent provision in a lease presents no anomaly in our law. In *Horn & Hardart Co. v. Nat'l R.R. Passenger Corp.*, 659 F.Supp. 1258 (D.D.C.1987), *aff'd*, 269 U.S.App.D.C. 53, 843 F.2d 546, *cert. denied*, 488 U.S. 849, 109 S.Ct. 129, 102 L.Ed.2d 102 (1988), the court upheld the validity of a commercial lease provision which required the tenant to pay three times the average rent upon holding over, noting that "other jurisdictions have approved even more onerous clauses." *See generally* FRIEDMAN, *supra*, § 18.2, at 956–57 (citing cases). In the case of a holdover

---

monthly basic rent, provided that nothing herein or the collection of such rent during the holding over period shall be, or shall be deemed to be, a waiver of sublessor's right to require Sublessee to vacate the Demised Premises.

**4.** An argument might be made that the parties should be able to make any agreement they wished with respect to the amount of "rent" that would be payable under various circumstances. As discussed in part A, *supra*, caselaw indicates that a landlord may seek rent from a holdover tenant at the rate provided for in the lease.

**5.** An obvious example is where the rental value of the property has sharply increased. Hence we have said that "[g]enerally, the measure of damages for the unlawful detention of leased premises is the fair and reasonable rental value of the property for the time it is wrongfully withheld," *Berg v. Slaff*, 125 A.2d 844, 846 (D.C. 1956); *accord* 2 FRIEDMAN, *supra*, § 18.2; SCHOSH-

---

sublessee, the problem can be particularly acute since the sublessor will remain liable to the landlord even though enjoying no use of the property. We think the trial court correctly rejected the assertion that the lease clause was unenforceable as a penalty.

*Affirmed.*

INSKI, *supra*, § 2.24, and have recognized the proposition that the fair rental value is not necessarily determined by the amount of rent previously being paid by a holdover tenant, *Young & Simon, Inc. v. Brown*, 387 A.2d 724, 725 (D.C.1978); *see also Novak v. Cox*, 538 A.2d 747, 751 (D.C.1988) (once notice to vacate became effective, tenant could not remain without paying the amount landlord gave notice that he would be charging). There may also be consequential damages. RESTATEMENT (SECOND) OF PROPERTY, LANDLORD & TENANT § 14.6 (1977) (foreseeable special damages are recoverable); 49 AM. JUR.2D *Landlord & Tenant* § 1126 (1970) (loss of profits and other special damages are recoverable); 2 FRIEDMAN, *supra*, § 18.2 (landlord may in some cases recover foreseeable special damages and loss of profits); SCHOSHINSKI, *supra*, § 2.24 (lost profits and costs of litigation are recoverable).