Christopher Todd YOUNG, Appellant,

v.

**INTERSTATE HOTELS AND RESORTS, Appellee.**

No. 05–CV–363.

District of Columbia Court of Appeals.

Argued April 18, 2006.

Decided Aug. 31, 2006.

Harold Brazil, for appellant.

Sanford A. Friedman, Washington, DC, for appellee.

Before FARRELL and RUIZ, Associate Judges, and BELSON, Senior Judge.

BELSON, Senior Judge:

Appellant Christopher T. Young appeals the trial court's order granting summary judgment in favor of appellee Interstate Hotels & Resorts as a result of the trial court's granting of appellee's motion to strike the testimony of appellant's expert witness. We agree with the trial court that the proffered witness did not have the requisite knowledge to testify about the standard of care for effective hotel operations in support of appellant's theory that appellee was negligent because it did not have in effect a policy or procedure for using the freight elevator to extract injured persons from the hotel. Moreover, appellant did not act diligently to designate another witness with the needed expertise in a timely manner. Appellant's expert witness was qualified, however, as an expert in elevator operation, maintenance and design and thus possessed sufficient knowledge to opine on appellant's alternative theory that appellee was negligent, *inter alia*, because it failed to provide instructions for the safe operation of a freight elevator. Therefore, we reverse and remand for further proceedings consistent with this opinion.

## I.

The procedural history of this case dates from December 30, 2002, when appellant filed a complaint against appellee for negligence. The complaint, subsequently amended on February 5, 2003, alleged that on August 17, 2002, appellant, an emergency medical technician ("EMT"), responded to a call at appellee's Embassy Row Hotel located at 2015 Massachusetts Avenue, N.W. Upon appellant's arrival at the hotel, a hotel employee escorted him to the freight elevator, operated the elevator and took appellant down to an unconscious employee in the kitchen area. After evaluating the injured employee, appellant deter-

mined that he needed to return to the ambulance to obtain additional equipment to treat the employee. Appellant could not locate any hotel employee to assist him and, believing that the injured employee required immediate treatment, reentered the freight elevator and attempted to operate it himself. The freight elevator, which was not accessible to the general public, had two manually operated doors. The outside door was comprised of two parts: one that came down from the top, and the other that came up from the bottom. The inside door had to be pulled across in a horizontal direction. Appellant, unfamiliar with the operation of the elevator, was injured when the elevator door slammed shut on his finger.

Appellant asserted two theories of liability in his amended complaint. Count One alleged that appellee failed to provide safe elevator equipment; warn of the danger of operating the elevator; provide instructions for the operation of the elevator; and assist appellant with the operation of the elevator. Count Two alleged that appellee failed to train and supervise hotel employees in the operation of the elevator.

On April 11, 2003, an initial scheduling conference was held. The resulting scheduling order required appellant to designate expert witnesses by June 11, 2003. Appellant filed his Super. Ct. Civ. R. 26(b)(4) statement on June 12, 2003, one day late, in which he identified Harold Rose as an expert witness. The scheduling order was subsequently amended on October 30, 2003, to extend the deadline for close of discovery to December 11, 2003, but the deadline for filing appellant's Rule 26(b)(4) statement had already expired on June 11, 2003. On October 28, 2003, appellee filed its first motion to strike appellant's expert, Harold Rose. The trial judge initially assigned to this matter denied this motion due to appellee's failure to provide the hotel's elevator records prior to appellant's physical inspection of the elevator. The judge granted appellant leave to amend his Rule 26(b)(4) statement once appellee provided the records and his expert had an opportunity to inspect the elevator.

On February 11, 2004, appellee filed its second motion to strike Mr. Rose's expert opinion on the basis that appellant had not supplemented Mr. Rose's expert designation after the discovery period had concluded. After initially granting appellee's second motion to strike Mr. Rose as an expert on March 1, 2004, the trial judge next assigned to this matter granted appellant's motion to reconsider his order on April 22, 2004, noting that the remedy was harsh, as it would most likely dispose of the entire litigation.

On September 14, 2004, approximately nine months after the close of discovery, appellee filed a third motion to strike Mr. Rose "for substantive reasons." The trial court issued an order on December 8, 2004, striking Mr. Rose's proffered testimony. In the interim, a September 28, 2004, pretrial conference had set the trial date for March 21, 2005. Appellant filed a motion on December 23, 2004, over one year after discovery ended, to modify the pretrial order to allow the naming of another expert witness, still unidentified at the time, and for reconsideration of the trial court's order striking Mr. Rose. This motion was denied by the trial court on February 8, 2005.

On March 15, 2005, the trial court granted appellee's third motion for summary judgment, which had been filed on January 7, 2005. The trial court concluded that without the benefit of an expert witness to testify about "the operation and maintenance of a non-public freight elevator, as well as a hotel's training of employees with regard to that elevator," appellant could not prove his case.

A timely appeal of the trial court's order granting summary judgment followed.

Appellant contends that the trial court erred in its pretrial rulings by denying his motion to modify the pretrial order to allow the addition of an expert witness, as yet unnamed, to his Super. Ct. Civ. R. 26(b)(4) statement that was incorporated into the pretrial statement, and granting appellee's motion to strike the proffered testimony of appellant's expert witness in its entirety.

## II.

■■■ "Summary judgment is appropriate only when the record, viewed in the light most favorable to the non-moving party, establishes that there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law." *Taylor v. Akin, Gump, Strauss, Hauer & Feld*, 859 A.2d 142, 146 (D.C.2004) (internal quotations and citations omitted). This court applies "the same substantive standard as the trial court" and "conduct[s] an independent review of the record." *Id.* (citation omitted).

The pretrial order may set limits with respect to the time for voir dire, opening statement, examination of witnesses, and closing argument and may also limit the number of lay and expert witnesses who can be called by each party. The pretrial order shall control the further course of the action unless modified by a subsequent order. The pretrial order may be modified at the discretion of the Court for good cause shown and shall be modified if necessary to prevent manifest injustice.

Super. Ct. Civ. R. 16(g) (2006). Moreover, a party can file a motion requesting additional time for discovery provided that:

(1) Good cause is shown to exist for granting additional time for discovery; and

(2) The moving party accompanies the motion with a detailed discovery plan

which lists the specific methods of discovery to be conducted, the persons and materials to be examined and the date within which all further discovery shall be completed.

Super. Ct. Civ. R. 26(e)(1)-(2) (2006). This court "defer[s] to the exercise of the trial court's discretion under Rules 16 and 26." *Robinson v. Samuel C. Boyd & Son, Inc.*, 822 A.2d 1093, 1100 (D.C.2003). "Nonetheless, we must balance this concern for judicial economy against the strong judicial and societal preference for determining cases on the merits." *Abell v. Wang*, 697 A.2d 796, 800 (D.C.1997).

■■■ In *Abell*, as in this case, the trial court granted appellees' request for summary judgment based on the court's previous order striking appellant's expert witness. *Id.* This action was preceded by an order denying appellant's request to inspect appellee's property and a subsequent order denying appellant's motion to file his witness list and Rule 26(b)(4) statement after the trial court's deadline had passed. *Id.* at 801. We concluded that the five factors enumerated in *Weiner v. Kneller*, 557 A.2d 1306 (D.C.1989), that apply to the exclusion of evidence sanction "should apply also when orders limited to excluding evidence obviously will have the effect of dismissal." *Abell, supra*, 697 A.2d at 802.

[T]he following factors are relevant in deciding whether to allow expert testimony improperly left off a Rule 26(b)(4) statement, and the party seeking to introduce it must bear the burden of satisfying a preponderance of them:

(1) whether allowing the evidence would incurably surprise or prejudice the opposite party;

(2) whether excluding the evidence would incurably prejudice the party seeking to introduce it;

(3) whether the party seeking to introduce the testimony failed to comply

with the evidentiary rules inadvertently or willfully;

(4) the impact of allowing the proposed testimony on the orderliness and efficiency of the trial; and

(5) the impact of excluding the proposed testimony on the completeness of information before the court or jury.

*Weiner, supra,* 557 A.2d at 1311–12.

Our determination of whether a trial court order is consistent with the *Weiner* formulation and the weight to be accorded each of its five factors will be shaped in large part by the particular circumstances of each case. The trial court's February 8, 2005, Order Denying Plaintiff's Motion to Modify the Pre–Trial Order and for Reconsideration does not specifically list and discuss all of the factors enumerated in *Weiner, supra.*[1] It does, however, refer to several of them. It notes with respect to the first factor that appellee would be penalized, and in that sense prejudiced, if its prior challenge to the expert's substitution would simply lead to appellant's being given a series of chances to do what it should have done in the first place. The court also referred to the harm to appellee and to the process of giving appellant another chance to identify a suitable expert, noting that if the motion were granted, trial would have to be rescheduled. With respect to the second factor, the court took into account that the denial of the motion to modify the pretrial order might prove dispositive of the litigation. While the court found neither inadvertence nor willfulness, it did refer to appellant's failure to follow the rules of the court regarding

expert witnesses, factor three, and essentially faulted appellant for lack of diligence. With respect to the fifth factor, it did not require explanation that if appellant was not given more time to find the required expert, it was likely that information available to the jury would lack the "completeness" necessary to permit appellant to present an adequate case.

Before this court, the parties press the same points. Appellee asserts that it would have been prejudiced if appellant had been allowed to name another expert witness "on the eve of trial" because appellee had complied with Rule 16(b) by properly filing a timely motion in limine to exclude Mr. Rose's testimony. On the other hand, appellant contends that appellee was not prejudiced or surprised because it was appellee who argued to the trial court that appellant needed an expert in hotel management in order to establish a case. Appellant suggests that even if appellee were surprised by his request for a new expert, the prejudice could be cured by allowing appellee additional time to depose appellant's new expert. Appellant submits there was ample time to accommodate his request for designation of a new expert witness because he filed his motion approximately three months before trial was scheduled to commence. *See Daniels v. Beeks,* 532 A.2d 125, 128 (D.C.1987) (there was adequate time for "appellee to obtain discovery of any additional witnesses identified in appellants' supplemental pretrial statement" when appellants moved to amend their pretrial statement over a month before trial began).[2] Appellant em-

---

1. The trial court stated:

 Even though the ruling on the current motion will likely prove dispositive, the court does not believe it must slavishly adhere to the preference for adjudication on the merits in a situation like that of this case, where plaintiff has been afforded a series of opportunities to properly designate his expert and has failed repeatedly to do so.

2. In *Daniels,* we held that the trial court's failure to comply with Rule 16 by not issuing a pretrial order was also a factor to be considered in determining whether the trial court abused its discretion by not allowing appellants to supplement their pretrial statement. *Id.* at 127–28. In addition to the timing of the motion to amend the pretrial statement, the

phasizes that, without an opinion from an additional expert witness, he would suffer great prejudice since the trial court stated in its December 8, 2004, order that such expertise was required for appellant to prove his theory that the hotel was negligent because it did not have a policy or procedure for extracting injured persons from the freight elevator.

There is nothing in the record that would cause us to conclude that appellant engaged in bad faith or acted willfully by seeking to designate another expert witness after his original expert, Mr. Rose, was stricken by the trial court. *Cf. Forti v. Ashcraft & Gerel,* 864 A.2d 133, 134 (D.C.2004) (upholding trial court's order granting summary judgment in favor of appellee-defendants in which trial court held that appellant-plaintiff's failure to meet discovery deadlines and designate an expert witness was willful and concluded that she had not named an expert witness because, in fact, she had none willing to agree that appellees had committed malpractice). Nevertheless, the record makes it clear that appellant was not diligent in managing this litigation by ascertaining his theory of the case and identifying an ap-

propriate expert witness who could testify about the standards a hotel should meet with respect to policies and procedures for use of a freight elevator to extract injured persons. *See* 3 JAMES WM. MOORE ET AL., MOORE'S FEDERAL PRACTICE § 16.14[1][b] (3d ed. 2006) ("[C]ourts are likely to grant extensions when the moving party can show that it has worked diligently to position the case for trial ... but unforeseeable circumstances, or events beyond its control ... have so intervened that the moving party will not have a fair opportunity to develop the evidence it needs....."). The timing of the trial court's April 22, 2004, order granting appellant's motion to reconsider the trial court's order granting appellee's second motion to strike Mr. Rose as an expert witness is significant. This order placed appellant on notice that the trial court perceived that Mr. Rose had altered the basis for his expert opinion as to why the hotel was negligent. This new theory of liability, not outlined in the amended complaint, was that the hotel was negligent because it did not have a policy or procedure for using the freight elevator to extract injured persons from the hotel. The

---

*Daniels* court also considered the element of surprise to the opposing party and whether the evidence was "newly discovered" after the parties' pretrial conference. *Id.* at 128. Here, appellant contends that appellee's failure to provide him with requested documents in a timely manner, including those concerning the hotel's policies or procedures for extracting injured persons from the elevator, resulted in Mr. Rose's delay in delivering his opinion. In *Daniels, supra,* 532 A.2d at 129, appellants determined they would need expert testimony after reviewing some medical records that were produced after the pretrial conference. In contrast, in the instant case, appellant's discovery that appellee did not have any written policies or procedures concerning this area of its hotel operations, after appellee's delay in responding to appellant's request for such documents, did not alter appellant's need to identify an expert witness

to opine on the adequacy of a hotel's policies and procedures for extracting an injured person from a freight elevator. Appellant pursued this theory of negligence from the time he filed his amended claim as demonstrated by his early request to appellee for documentation regarding the operating policies and procedures for its hotel. Appellant apparently assumed that Mr. Rose's significant experience in the field of elevator maintenance and design would qualify him to testify in this area. The trial court's ruling that Mr. Rose did not possess the necessary experience and expertise to opine on a hotel's standard of care for extracting injured persons from a freight elevator does not, of course, constitute newly discovered evidence as appellant argues. Thus, appellant's argument that his failure to identify a witness with the required expertise occurred as a result of newly discovered evidence fails.

trial court's December 8, 2004, order granting the motion to strike Mr. Rose's testimony specifically referred to the need for such expertise.[3] Thus, appellant was on notice for more than seven months that this additional type of expertise was needed, and apparently did nothing to identify a witness with such expertise. Nor did appellant provide any reasons for his failure or inability to identify an additional expert witness prior to the discovery deadline. *See Snyder v. Kutsher's Country Club,* No. 83–5999, 1985 U.S. Dist. Lexis 21733, at **6–9 (E.D.Pa. Mar. 15, 1985) (denying plaintiffs' motion to extend the date for submission of expert witnesses after two previous extensions of pretrial deadlines because plaintiffs failed to provide any explanation for their delay in establishing the need for an expert witness, although denial of extension would result in exclusion of important evidence).

In his December 23, 2004, motion requesting additional time for discovery, appellant failed to identify an expert witness who could potentially provide an opinion that would support his theory that the hotel was negligent because it did not have a policy or procedure for using a freight elevator to extract injured persons from the hotel. Because appellant had not identified a witness with this requisite expertise, we cannot assume that appellant would have been able to produce such a witness if given additional time. *Cf. Forti, supra,* 864 A.2d at 139 (concluding "that

Plaintiff has no expert because no one has been willing to agree that legal malpractice was committed here").

■ We conclude that the trial court did not abuse its discretion by denying appellant's motion to amend the pretrial order to allow additional time for discovery to enable appellant to identify an as yet unnamed expert witness in the area of hotel management. As we explain in the next part of this opinion, however, we must reverse and remand for trial on the theory of liability that appellant set forth in Count One of his amended complaint. The question may arise on remand whether appellant should be permitted to use the time before trial to identify and supply a Rule 26(b) statement of an expert witness in the area of hotel policies and procedures regarding extraction of injured persons from a freight elevator. We hold that appellant shall not be permitted to do so, because such a course would enable appellant ultimately to gain advantage from the series of delays that led to the trial court's decision that appellant should not be given further opportunity to comply with the rules of procedure. *See* Super. Ct. Civ. R. 16(*l*) & 37(b)(2)(B).

## III.

Although we have concluded that appellant was properly denied the opportunity to amend the pretrial order and present an

---

**3.** The trial court's order stated:

Mr. Rose has extensive experience in connection with elevators, including being president of American Elevator Inspection Services, academic degrees in operations, maintenance and design of elevators and certifications from the National Society of Mechanical Engineers and the Vertical Transportation Safety Code Association. He was, in fact, chief elevator inspector for the Washington Metropolitan Transit Authority and managed government buildings for six years.... But the issue on which

Mr. Rose wishes to opine is not mechanical or operational in nature. It does not involve how an old, manually operated freight elevator works. Rather, it concerns a standard of care applicable to a hotel for extracting injured persons from a freight elevator. As such, it appears to fall outside Mr. Rose's considerable experience and expertise, and, furthermore, does not appear from the deposition to be an area about which Mr. Rose is sufficiently knowledgeable to allow his expert opinion on this question to be presented to the jury.

expert in the area of hotel policies and procedures regarding use of a freight elevator for the extraction of injured persons from the hotel, we must also determine whether the trial court erred in precluding appellant's expert from testifying concerning the appropriate standards of care related to the allegedly negligent acts and omissions identified in Count One of appellant's amended complaint, *i.e.*, failing to provide safe elevator equipment; warn of the dangers involved in operating the elevator; provide instructions for the operation of the elevator; and assist appellant in the operation of the elevator.

 "We review the admission or exclusion of expert testimony for abuse of discretion." *Haidak v. Corso*, 841 A.2d 316, 322 (D.C.2004) (citation omitted). This court has established

> a three-part test for the admission of expert testimony: (1) the subject matter must be so distinctively related to some science, profession, business or occupation *as to be beyond the ken of the average layman;* (2) the witness must have sufficient skill, knowledge, or experience in that field or calling as to make it appear that his opinion or inference *will probably aid the trier in his search for truth;* and (3) expert testimony is inadmissible if the state of the pertinent art or scientific knowledge does not permit a reasonable opinion to be asserted even by an expert.

*Id.* (internal quotations and citations omitted).

The first and third elements of the test enumerated in *Haidak, supra,* are not at issue here. Accordingly, we examine whether the trial court's ruling with respect to Mr. Rose's area of expertise and testimony satisfied the second element of the test. In concluding that Mr. Rose's testimony would not likely aid a jury, the trial court reasoned that: (1) Mr. Rose's opinion that appellee violated the standard

of care established by Rule 207.4 of the Safety Code for Elevators and Escalators by allowing its freight elevator to be accessible to the general public was not applicable to this matter because appellant, engaged in his work as an EMT at the time of his injury, was not a member of the general public; and (2) Mr. Rose did not have the required expertise to opine on the standard of care to be used by a hotel in operating a freight elevator to extract an injured person.

 "Where there is an articulable reason to doubt an expert's competency in a particular area, the trial judge need not qualify the witness." *Haidak, supra,* 841 A.2d at 327 (citation omitted). The trial court found that while Mr. Rose was deemed to be "an expert in the operation of elevators," he "ha[d] never been involved in the management of a hotel ... never worked for a commercial building ... never been a private property manager ... never been retained as an expert in property management." Thus, it was reasonable for the trial court to conclude that Mr. Rose's expertise in elevator operations did not qualify him to opine on a hotel's policies and procedures for using the freight elevator in an emergency situation to extract injured persons.

 The trial court, however, did determine that Mr. Rose was "an expert in the operation of elevators" and "qualified as an expert in elevator maintenance and design." Based on these findings, Mr. Rose had the necessary expertise to testify about the appellant's theory of liability stated in Count One of his amended complaint that appellee negligently failed to provide safe elevator equipment; warn of the danger of operating the elevator; provide instructions for the operation of the elevator; and assist appellant with the operation of the elevator. In striking Mr. Rose's proffered testimony, the trial judge

relied on his reading of Mr. Rose's deposition as stating that appellant, as an EMT, should not be deemed a member of the "general public" within the meaning of Rule 207.4 of the Safety Code for Elevators and Escalators, and thus could not invoke that code's prohibition against allowing members of the general public to have access to freight elevators.[4] Mr. Rose's deposition was, at best for appellee, ambiguous on that point, as Mr. Rose testified that emergency service personnel would not be authorized under the terms of the code to operate the freight elevator. To the extent that the regulation is relevant, a fair reading of Mr. Rose's deposition testimony cannot be taken to express the view that it was not applicable to appellant. *See Byrd v. Allstate Ins. Co.*, 622 A.2d 691, 693 (D.C.1993) ("[W]e must give appellant, the party opposing summary judgment, the benefit of all favorable inferences that can be drawn from the evidence.") (citation omitted). So far as the record shows, Mr. Rose did not opine that, under the code or otherwise, an EMT with no special training in the operation of a freight elevator should be permitted to operate a freight elevator. We conclude that the trial court abused its discretion in striking Mr. Rose's testimony with respect to these aspects of appellant's claims.

Accordingly, we reverse the trial court's grant of summary judgment in favor of appellee and remand for further proceedings consistent with this opinion.

*So ordered.*

**4.** Rule 207.4 provides: "Freight elevators shall not be permitted to carry passengers, except that the authority having jurisdiction may grant permission for an elevator to carry passengers, subject to the following.

(a) The elevator shall not be accessible to the general public."

AM. SOC'Y OF MECH. ENG'RS, PUB. NO. A17.1, SAFETY CODE FOR ELEVATORS AND ESCALATORS 79 (1996).