Adrienne D. TAYLOR, Appellant

v.

AKIN, GUMP, STRAUSS, HAUER & FELD, Appellee.

No. 98–CV–739.

District of Columbia Court of Appeals.

Submitted April 29, 1999.
Decided Sept. 16, 2004.

---

Adrienne D. Taylor filed a brief pro se.

Jonathan S. Spaeth, Washington, and Tamara R. Parker were on the brief for appellee.

Before TERRY and RUIZ, Associate Judges, and STEADMAN, Associate Judge, Retired.*

TERRY, Associate Judge:

This case arises in the aftermath of three lawsuits involving tenants of the Tyler House Apartments which extended over a period of almost ten years. Appellant, Adrienne Taylor, was a resident of Tyler House and the Secretary of the Tyler House Tenant Council when the first suit was filed in 1987. By her own account, Ms. Taylor played a substantial role in the early stages of the litigation. She helped the Tenant Council secure the services of the law firm of Akin, Gump, Strauss, Hauer & Feld, L.L.P. ("Akin Gump"), on a *pro bono* basis. Akin Gump filed suit in the Superior Court against the apartment building and its private owners, presenting various claims based on the allegedly substandard living conditions at Tyler House. The complaint named the

---

* Judge Steadman was an Associate Judge of the court at the time this case was submitted. His status changed to Associate Judge, Retired, on August 8, 2004.

Tenant Council as the sole plaintiff and defined the Council's membership as all the tenants of Tyler House. There was, however, no request for class certification in that case, and no class was ever certified. Shortly after that complaint was filed, Ms. Taylor was evicted from her apartment, thus losing her tenant status and her position as Secretary of the Tenant Council. A few months after her eviction, the damage claims in the original lawsuit were dismissed for lack of standing.

About two months later, Akin Gump filed a second suit seeking relief on behalf of all the tenants of Tyler House as a class. Ms. Taylor's mother and another tenant were named as class representatives. The class was eventually certified to include persons who were tenants of the apartment building on July 27, 1988, the date on which the motion for class certification was filed—thus not including Ms. Taylor, who had ceased to be a tenant more than a year earlier. After years of litigation in the Superior Court and the United States District Court for the District of Columbia, the tenants, as a class, recovered almost $1.5 million from judgments entered by both courts.

When Ms. Taylor learned about the judgments, she contacted Akin Gump in an effort to claim a share of the damages, but was told she was not eligible to receive any of the money because she was not a member of the class. After several other attempts to obtain a portion of the damages, Ms. Taylor filed the instant suit against Akin Gump seeking a declaratory judgment which would name her as a member of the class, thereby entitling her to a share of the litigation proceeds. Akin Gump filed a motion for dismissal or for summary judgment, which the trial court granted in a one-page order. From that order Ms. Taylor appeals; we affirm.

## I

Over nearly a ten-year period, Akin Gump represented the Tenant Council, and then the tenants of the Tyler House apartments as a class, *pro bono,* in a series of lawsuits against the owners and managers of the building, based on the substandard living conditions in the apartments. The first lawsuit was filed in the Superior Court of the District of Columbia on March 3, 1987. The complaint named the Tenant Council as the sole plaintiff and described it as consisting of "all the tenants of Tyler House, a 301–unit apartment building located at 1200 North Capitol Street, N.W., Washington, D.C." When the complaint was filed, Ms. Taylor was a tenant of Tyler House and was serving as Secretary of the Tyler House Tenant Council. However, three months later, in June 1987, Ms. Taylor was evicted from her apartment. She moved in with her mother, who also lived in Tyler House,[1] but Ms. Taylor was no longer a tenant of the building and could no longer serve on the board of the Tenant Council as its Secretary.

All of the damage claims in the original lawsuit were dismissed for lack of standing in November 1987, five months after Ms. Taylor was evicted from her apartment. The claims for injunctive relief, however, were not dismissed. Thereafter, in January 1988, Akin Gump filed a second suit—a class action, which the first suit was not. The class consisted of all the tenants of Tyler House; Elaine Johns (Ms. Taylor's mother) and Julia Simpson were named as plaintiffs and representatives of the class. The court *sua sponte* consolidated the class action and the remaining injunctive

---

1. Ms. Taylor remained with her mother until 1990, when she moved to another location.

claims from the first suit. The tenants then moved to certify the class on July 27, 1998. On April 27, 1989, Judge Henry Greene of the Superior Court granted the motion and certified the class as "comprised of all persons who were tenants of Tyler House as of July 27, 1988." In accordance with the judge's order, Akin Gump provided written notice to all members of the class who could reasonably be located, but it did not send such notice to anyone who was not a member of the class as defined in the order.

After the class had been certified, the tenants moved to join additional defendants. When the Superior Court denied their motion, the tenants filed a new and separate lawsuit in the United States District Court for the District of Columbia and sought class certification there. On February 3, 1992, the District Court certified the class to include all persons who were tenants of Tyler House as of July 27, 1988, excluding those who had moved away in the interim.

As a result of judgments in the two cases, the tenants—as a class—recovered approximately $1.5 million in damages. The money was placed in escrow and later distributed to individual class members. When she learned about the distributions in 1995, Ms. Taylor contacted Akin Gump, claiming she was entitled to a share of the money recovered in the litigation. Akin Gump informed her that, because she did not satisfy the requirements for class membership, she was not a member of the class and therefore was not entitled to any of the money. Ms. Taylor sent a letter to United States District Judge Charles Richey, who was handling the federal court case, asking him to "look into" the matter for her. Judge Richey forwarded the letter to Akin Gump and asked the firm to advise him as to Ms. Taylor's claims. When Akin Gump explained that Ms. Tay-

lor was not part of the class, Judge Richey sent her a letter stating, "There is nothing further that I can do to be of assistance, although I would like to, in light of the letter from your counsel."

Ms. Taylor also filed a complaint with the Office of Bar Counsel. At Bar Counsel's request, Akin Gump sent Ms. Taylor another letter again informing her that she was not entitled to any of the money recovered in the class actions because she did not meet the requirements for class membership. Bar Counsel's inquiry was terminated, and no further action was taken.

Ms. Taylor then filed a "Complaint for Declaratory Relief" in the Superior Court, seeking an order naming her as a member of the class of persons represented in the litigation. Akin Gump responded with a motion to dismiss or, in the alternative, for summary judgment. The court granted the motion in a brief order, stating, "On April 27, 1989, Judge Greene defined the class as 'all persons who were tenants of Tyler House Apartments as of July 27, 1988.' Plaintiff, who admittedly was evicted from Tyler House in June 1987, obviously is not a member of said class." Ms. Taylor then noted this appeal.

II

A. *Membership in the Class*

In its order granting Akin Gump's motion, the trial court failed to state whether it was dismissing the complaint for failure to state a claim upon which relief could be granted, under Super. Ct. Civ. R. 12(b)(6), granting judgment on the pleadings under Rule 12(c), or granting summary judgment under Rule 56. However, because both parties attached documents to their pleadings and because the court considered those documents in rendering its decision—the court

specifically relied on Judge Greene's order of April 27, 1989, defining the members of the class—we treat the dismissal as a grant of summary judgment. *See, e.g., Kitt v. Pathmakers, Inc.,* 672 A.2d 76, 79 (D.C.1996) ("[w]hen the trial court decides a Rule 12(b)(6) motion by considering factual material outside the complaint, the motion shall be treated as if filed pursuant to Rule 56"). Summary judgment is appropriate only when the record, viewed in the light most favorable to the non-moving party, establishes "that there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law." Super. Ct. Civ. R. 56(c); *see, e.g., Colbert v. Georgetown University,* 641 A.2d 469, 472 (D.C.1994) (en banc); *see generally Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Applying the same substantive standard as the trial court, we conduct an independent review of the record. *See Partnership Placements, Inc. v. Landmark Insurance Co.,* 722 A.2d 837, 841 (D.C.1998).

■ Ms. Taylor acknowledged in her complaint that she was evicted from her Tyler House apartment in June 1987. Because she was not a tenant of the building on the critical date, July 27, 1988—the date when the first motion for class certification was filed—she was not a member of the classes that were certified by both the Superior Court and the United States District Court and is therefore not entitled to any of the damages recovered from the judgments entered in either court. On that point there is no material issue of fact, and Akin Gump is entitled to judgment as a matter of law. The trial court properly granted Akin Gump's motion for summary judgment.

### B. *Malpractice*

■ Although Ms. Taylor's complaint does not contain a separate claim of legal malpractice, it does state that Akin Gump "by oversight or negligence failed to notify the plaintiff as ordered by the court ...." Reading that statement in the light most favorable to Ms. Taylor, and bearing in mind the generous standard of review applicable to dismissals under Rule 12(b)(6),[2] we think it appropriate at least to consider whether there might be a viable claim of malpractice here. We conclude that there is not.

In the context of this case, a claim of malpractice would have to be based on the notion that Akin Gump was negligent when it failed to notify Ms. Taylor that the damage claims in the first lawsuit had been dismissed, and that she was not a member of the class that had been certified in the second lawsuit. But the statement in Ms. Taylor's complaint that Akin Gump "failed to notify [her] as ordered by the court" is a specific reference to a portion of Judge Greene's class certification order of April 27, 1989, which Ms. Taylor attached to her complaint as an exhibit. Judge Greene in that order directed that notice of the existence of the class, *see* Super. Ct. Civ. R. 23(c)(2), be given "to all members of the class," which he defined in the preceding paragraph as "comprised of all persons who were tenants of Tyler House Apartments as of July 27, 1988."

---

2. "A court should dismiss a complaint [under Rule 12(b)(6)] only if 'it appears beyond doubt that the plaintiff can prove *no set of facts* in support of [her] claim which would entitle [her] to relief.'" *Perry v. District of Columbia,* 474 A.2d 824, 826 (D.C.), *cert. denied,* 469 U.S. 805, 105 S.Ct. 61, 83 L.Ed.2d 12 (1984) (citing *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957)). We must construe the complaint in the light most favorable to Ms. Taylor's claim, accepting her allegations as true. *See, e.g., McBryde v. Amoco Oil Co.,* 404 A.2d 200, 202 (D.C. 1979).

Since Ms. Taylor had ceased to be a Tyler House tenant in June 1987, more than a year before that cutoff date, she was not a member of the class and therefore was not entitled to notice under Judge Greene's order. Furthermore, the order said nothing at all about giving notice to *anyone* that the damage claims in the first lawsuit had been dismissed in November 1987.

 "In order to prove legal malpractice, a plaintiff must establish the applicable standard of care, a breach of that standard, and a causal relationship between the violation and the harm complained of." *Mills v. Cooter,* 647 A.2d 1118, 1123 (D.C.1994) (citation omitted). Thus Ms. Taylor would first have to establish that Akin Gump owed her a duty, because a professional malpractice claim depends upon the existence of a duty. "Absent duty there can be no breach and no negligence." *Goldberg v. Frye,* 217 Cal.App.3d 1258, 1267, 266 Cal.Rptr. 483, 488 (1990) (citations omitted); *see* 1 RONALD E. MALLEN & JEFFREY E. SMITH, LEGAL MALPRACTICE § 7.13, at 527 (4th ed.1996) (hereafter MALLEN & SMITH) ("Whatever the legal theory ... there must be a duty of care owed by the attorney to the plaintiff"); *N.O.L. v. District of Columbia,* 674 A.2d 498, 499 (D.C.1995).[3] With rare exceptions,[4] a legal malpractice claim against an attorney cannot withstand a summary judgment motion unless there is evidence showing the existence of an attorney-client relationship. It is on this point that any malpractice claim must fail,

because Ms. Taylor has not shown that she was ever Akin Gump's client.

When the Tyler House litigation began, Akin Gump represented only the Tyler House Tenant Council in its dispute with the owners of the building. The initial lawsuit named the Tenant Council as the only plaintiff. Although the complaint described the council as including all the tenants of the apartment building, the suit was not filed as a class action, and Akin Gump did not purport to represent any of the individual tenants. After the damage claims in the first suit were dismissed for lack of standing, Akin Gump filed a second suit as a class action. Two individual tenants were named as class representatives, and the class members were all persons who were tenants of the building *when the motion for class certification was filed.* For purposes of this appeal, we assume that Akin Gump at that time represented the individual members of the class and had established an attorney-client relationship with each of them.[5] But Ms. Taylor was not a member of the class because she had ceased to be a tenant before the class came into existence. Consequently, the certification of the class did not create an attorney-client relationship between her and Akin Gump, and Akin Gump owed her no identifiable duty, either as an individual or as a member of the class (which she never was). Any agreement with the law firm in which she may have participated would necessarily have been made in her capacity as Secretary of the Tenant Council, and on behalf of the Council only. As

---

3. "The foundation of modern negligence law is the existence of a duty owed by the defendant to the plaintiff. Negligence is a breach of duty. If there is no duty, there can be no breach, and hence no negligence." *N.O.L.,* 674 A.2d at 499 n. 2 (citing *Palsgraf v. Long Island R.R.,* 248 N.Y. 339, 162 N.E. 99 (1928)).

4. *See, e.g., Needham v. Hamilton,* 459 A.2d 1060, 1062 (D.C.1983) (intended beneficiary of a will may sue the drafting attorney for legal malpractice in failing to include him in the will as a beneficiary).

5. We express no opinion here as to the scope of that relationship or the duties owed by Akin Gump to the individual class members.

far as the record shows, Akin Gump never rendered any legal advice to Ms. Taylor individually and never specifically agreed to represent her.

Ms. Taylor states in her reply brief that she "was not given proper legal representation by [Akin Gump] in a case in which she was a plaintiff." But, as we have seen, she was never a plaintiff in either of the two class actions because she was never a member of either certified class. Even if we interpret this statement as referring to the first suit in the Superior Court, which was not a class action but was filed in the name of the Tenant Council, and even if we assume for the sake of argument that her being a tenant made her a plaintiff of sorts, her status as a plaintiff necessarily ended when she ceased to be a tenant in June 1987. From that point onward, Akin Gump no longer owed Ms. Taylor any duty with respect to the first lawsuit (assuming that it had such a duty, which we cannot identify) because the only source of such a duty—her tenancy—had come to an end.[6] Ms. Taylor was no longer a tenant, and hence no longer even a potential plaintiff, when the damage claims were dismissed in November 1987. The only arguable assertion of a breach of duty with respect to the first lawsuit is the statement in her complaint that Akin Gump "failed to notify [her] as ordered by the court." But, as we have seen, the order to which this refers was an order to notify "all members of the class" in the second Superior Court suit (the class action); it said nothing whatever about the first suit brought by the Tenant Council. Thus, giving Ms. Taylor's claim as elastic a reading as possible, we can find nothing in it that would impose liability on

Akin Gump for anything it did in the first lawsuit.

We have found only one case with facts that resemble the ones presented here. In *Formento v. Joyce,* 168 Ill.App.3d 429, 118 Ill.Dec. 857, 522 N.E.2d 312 (1988), the defendants, a group of lawyers, had filed a class action involving the purchase of some property in the Bahamas. The complaint named several persons as representatives of the proposed class. The trial court dismissed the original claim, but the appellate court reversed the dismissal and remanded the case. Following the remand, the named plaintiffs filed an amended complaint seeking to add several additional plaintiffs and to withdraw the class action allegations. Then, after the trial court accepted the amended complaint, the case was dismissed pursuant to a settlement agreement. Thereafter, Formento and other potential members of the proposed (but never certified) class filed a complaint against the defendant lawyers, alleging legal malpractice because, among other things, the law firm "negligently failed to pursue the Bahamas litigation consistent with plaintiffs' interests" and "negligently failed to inform, notify, and disclose to plaintiffs their rights in the Bahamas litigation." *Id.* at 433, 118 Ill.Dec. 857, 522 N.E.2d at 314.

The trial court granted the lawyers' motion for summary judgment, and the appellate court affirmed, holding that there was no attorney-client relationship because there was no privity between the parties. In his deposition, plaintiff Formento testified that he did not retain the defendants' law firm or pay, or offer to pay, a fee to any of the individual lawyers, and that

---

**6.** The District of Columbia follows the "continuous representation" rule. *See R.D.H. Communications, Ltd. v. Winston,* 700 A.2d 766, 768 (D.C.1997). If we assume that somehow Ms. Taylor can be deemed to have been a client of Akin Gump in the first lawsuit, then under that rule the firm's representation of her would have continued until she ceased to be a client, *i.e.,* until she ceased to be a *tenant* in July 1987—but no longer.

neither the law firm nor the individual lawyers ever rendered any legal advice to him. The court, relying on that undisputed evidence, concluded that no attorney-client relationship existed. Focusing on the fact that the primary purpose and intent of filing the class action was not to benefit Formento but to benefit the named plaintiffs, who were the lawyers' clients, the court concluded that "[t]he act of originally filing a cause of action as a class action suit, without more, cannot be said to clearly indicate an intent to benefit the unnamed members of the purported class." *Id.* at 437, 118 Ill.Dec. 857, 522 N.E.2d at 317.

Although there are some differences between *Formento* and the instant case, *Formento* is still the only case of which we are aware that is even remotely close on its facts to the one before us. The pertinent holding of *Formento* is that "attorneys who represented individuals in an incipient class action did not owe a duty to unnamed members where the class was never certified." MALLEN & SMITH § 7.13, at 534 (citing *Formento* ). By the same reasoning, Akin Gump owed no duty to Ms. Taylor because she was never a member of the certified class, nor could she ever have become a member because she ceased to be a tenant more than a year before the class was certified. Ms. Taylor alleged that Akin Gump was negligent in failing to notify her "as ordered by the court." But the court ordered Akin Gump only to notify all the class members about the certification, and Ms. Taylor, having never been a member of the class, was not in the group of persons to be notified.

### III

There were three lawsuits filed by Akin Gump involving the tenants of Tyler House. The second and third were class actions, but the first was not. By the time the motion for class certification was granted in the second case, Ms. Taylor was no longer a tenant and was therefore ineligible for class membership; consequently, she never became a member of the class and was not entitled to a share of the damages recovered by the class in either the Superior Court or the United States District Court. Nor is there any basis to conclude, given the undisputed facts, that Akin Gump committed malpractice or that it breached any duty that it might have owed to Ms. Taylor. For these reasons the judgment of the trial court is

*Affirmed.*